**Glen HON, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 82–1356.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 7, 1983.

Decided Feb. 11, 1983.

H.K. Westmoreland, Fort Smith, Ark., for petitioner.

T. Timothy Ryan, Jr., Sol. of Labor, Donald S. Shire, Associate Sol., Richard B. Fellows, Atty., U.S. Dept. of Labor, Washington, D.C., for Director, Office of ·Workers' Compensation Programs.

Before HEANEY and BRIGHT, Circuit Judges, and HENLEY, Senior Circuit Judge.

HENLEY, Senior Circuit Judge.

Petitioner Glen Hon worked in coal mines in Arkansas, Oklahoma, Utah and Wyoming. His last coal mining job ended in 1951. In 1973 he filed a claim for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901 *et seq.*, asserting that he was totally disabled from pneumoconiosis, or black lung. After a hearing, an Administrative Law Judge (ALJ) denied his claim. The Benefits Review Board (BRB) affirmed. Mr. Hon has petitioned this court for review.

The Black Lung Benefits Act (the Act) incorporates the judicial review provisions of the Longshoremen's and Harbor Workers' Compensation Act (Longshoremen's Act), 33 U.S.C. § 921(c). Section 921(c) provides for a petition for review of a BRB

decision to be filed "in the United States court of appeals for the circuit in which the injury occurred."[1] The respondent, the Director of the Office of Workers' Compensation Programs, has filed a motion to dismiss for lack of jurisdiction.

The jurisdictional problem arises because black lung disease is a "cumulative" injury. It is caused by extensive exposure to coal dust, and it is impossible to say that any one exposure "caused" the miner to get black lung. The respondent argues that the place of the claimant's last exposure to coal mine dust is the place of the injury, and is thus determinative of where the appeal should be brought. In this case, that is Oklahoma; thus, respondent argues, the Tenth Circuit has jurisdiction over the appeal.

This appears to be a question of first impression. Only one case has mentioned the problem,[2] but found it unnecessary to resolve since on the facts the claimant had only been employed in one state. *Atlantic Ship Rigging Co. v. McLellan,* 184 F.Supp. 569 (D.N.J.1960), *aff'd,* 288 F.2d 589 (3d Cir.1961). Analogous cases involving liability of successive employers and insurers are helpful, but not dispositive.[3]

The respondent cites as support cases regarding employer liability for cumulative injuries under the Longshoremen's Act; these cases place sole liability for job related injuries on the last employer prior to the worker's awareness of his injury, regardless of length of employment or time of inception of the disease. *E.g., Smith v. Aerojet General Shipyards,* 647 F.2d 518 (5th Cir. 1981); *Travelers Insurance Co. v. Cardillo,* 225 F.2d 137 (2d Cir.), *cert. denied,* 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955). The policy behind this holding is the need to avoid complex decisions apportioning liability among employers.

While the "last injurious contact" rule is well established as a rule of employer liability in workmen's compensation cases, it has not always been applied in other situations where the time an injury occurs is important. In some cases in which the statute of limitations is at issue, an injury is deemed to occur when "the accumulated efforts of the deleterious substance manifest themselves," *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). In insurance cases interpreting contract language which imposed liability for "bodily injuries" which "occurred" while the insurer was at risk, it has been noted that these terms are "inherently ambiguous as applied to the progressive disease concept." *Ins. Co. of North America v. Forty-Eight Insulations,* 633 F.2d 1212, 1222 (6th Cir.1980), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981). Three circuits have interpreted similar language to impose liability on each insurance company at risk when a user of its insured's product was exposed to the hazard, even if other insurance companies were at risk at other times of exposure. *Keene Corp. v. Ins. Co. of North America,* 667 F.2d 1034, 1047 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982); *Porter v. American Optical Corp.,* 641 F.2d 1128, 1145 (5th Cir.), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981); *Forty-Eight Insulations,* 633 F.2d at 1223. *Contra Eagle-Picher Industries, Inc. v. Liberty Mutual Insurance Co.,* 682 F.2d 12, 19 (1st Cir.1982).[4]

In these cases involving cumulative injuries, the courts have determined the time or place the injury "occurred" according to the policies involved in each type of case. In this case, the place of injury is a jurisdictional issue. There are no complex liability decisions involved, as in the cases

---

1. Section 921(c) has consistently been held to be a jurisdictional provision, not a venue provision. *E.g., Dantes v. Western Foundation Corp. Ass'n.,* 614 F.2d 299 (1st Cir.1980); *Bassett v. Massman Construction Co.,* 120 F.2d 230 (8th Cir.), *cert. denied,* 314 U.S. 648, 62 S.Ct. 92, 86 L.Ed. 520 (1941).

2. In addition to the dearth of case law, there is no legislative history on this provision of the Black Lung Benefits Act.

3. Indeed, in this case there is no responsible mine operator.

4. These cases involved asbestos workers who had developed asbestosis.

discussed above. The primary concern is that the forum be convenient and connected to the injury. In cases where the place of injury is unknown or undeterminable, this concern is best served by a fair and flexible jurisdictional rule. We hold that in such cases, appeal lies in any circuit in which the claimant worked and was exposed to the danger, prior to manifestation of the injury. Because Mr. Hon was exposed to coal dust in Arkansas, this court has jurisdiction.

■ We now reach the merits of the case. A claimant is entitled to benefits if (1) he is a miner, (2) he is totally disabled by pneumoconiosis and (3) his pneumoconiosis arose out of employment in coal mines. 20 C.F.R. § 410.410(b) (1981). The burden is on the claimant to prove these elements by a preponderance of the evidence. *Prater v. Harris,* 620 F.2d 1074, 1080 (4th Cir.1980). However, there are a number of presumptions which work in the claimant's favor.[5] In this case, the ALJ found, after hearing, that Mr. Hon had worked in coal mines for a little over three years and thus was not entitled to any presumptions. He went on to hold that while Mr. Hon had established the existence of simple pneumoconiosis, he had not proved that he was disabled due to the pneumoconiosis.

■ The scope of review of an ALJ's decision is limited. The ALJ's findings of fact may be set aside by the Benefits Review Board only if they are not supported by substantial evidence. 30 U.S.C. § 921; *Parker v. Director,* 590 F.2d 748, 749 (8th Cir.1979). Our role is to assure that the

BRB properly adhered to its standard of review. This requires us to examine the ALJ's factual determinations and the record. *Walker v. Universal Terminal & Stevedoring Corp.,* 645 F.2d 170, 172–73 (3d Cir.1981); *Bumble Bee Seafoods v. Director,* 629 F.2d 1327, 1329 (9th Cir.1980); *See Parker,* 590 F.2d at 749.

Mr. Hon argues that the ALJ's decision not to apply any presumption was in error, and that the ALJ gave insufficient weight to the reports of two of Mr. Hon's physicians.

■ First, Mr. Hon argues that he had been employed as a miner for eighteen years, and thus that he was entitled to the benefit of the presumptions established in § 921(c)(4) of the Act.[6] To prove this, he relied in part on affidavits submitted by Hilda Boyd and Maxie GoBell that Mr. Hon had been employed in their father's blacksmith shop for eleven years. The Act defines "miner" as "any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal." 30 U.S.C. § 902(d). Work in a blacksmith's shop does not constitute work as a miner, unless the claimant has shown his specific job either constituted mining or preparation of coal, or had some connection to a coal mine. *See Adelsberger v. Mathews,* 543 F.2d 82, 84 (7th Cir.1976); *Roberts v. Weinberger,* 527 F.2d 600, 602 (4th Cir.1975). Because Mr. Hon's blacksmith job does not constitute work as a miner, we agree with the BRB that the ALJ did not err in excluding this

5. For example, if the claimant can show that he worked in the coal mines for ten years and is suffering from pneumoconiosis, there is a rebuttable presumption that the disease arose out of that employment. 30 U.S.C. § 921(c)(1).

6. Section 921(c)(4) provides in part:
(4) If a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the

existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. In the case of a living miner, a wife's affidavit may not be used by itself to establish the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine.

time from his computation of Mr. Hon's years as a coal miner.

 Mr. Hon's second argument is that the ALJ failed to give proper consideration to the reports of Mr. Hon's doctors that Mr. Hon was totally disabled from pneumoconiosis. The ALJ noted that significant portions of the medical reports of the two doctors contained the same wording, and that the "implication" he drew from these "verbatim portions" was that the evaluations were not "totally independent." The ALJ thus did not credit these reports, especially in view of other medical reports which did not support a finding of pulmonary disease or impairment. While we might have given somewhat more credit to the reports of Mr. Hon's doctors than did the ALJ, we must agree with the BRB that there was substantial evidence supporting the ALJ's finding that Mr. Hon was not totally disabled from pneumoconiosis, and that the ALJ did not commit reversible error in evaluating that evidence.

The motion to dismiss the appeal is overruled and the decision of the Board is affirmed.