**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 3 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

DOROTHY MAYNARD BERTHOLF,
widow of HERMAN MAYNARD,

Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT
OF LABOR,

Respondent.

No. 96-9522
(Petition for Review)
(No. 92-BLA-1610)

---

ORDER AND JUDGMENT[*]

---

Before BRORBY, LOGAN, and HENRY, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9.  The case is therefore

ordered submitted without oral argument.

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner Dorothy Maynard Bertholf, the widow of Herman Maynard, seeks review of a Benefits Review Board (Board) decision affirming the denial by the administrative law judge (ALJ) of her claim for survivor's benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945. Decedent, a coal miner for thirty-six years, died of coronary artery disease on January 19, 1991. The ALJ determined that, although petitioner met her burden of establishing that the decedent suffered from pneumoconiosis and that the pneumoconiosis resulted from his work in coal mines, petitioner failed to establish that the decedent's death was "due to pneumoconiosis," as required by 30 U.S.C. § 901(a) for an award of benefits. The Board affirmed the denial of benefits, and this appeal followed.

On appeal, petitioner argues that the ALJ (1) did not apply the correct legal standard in evaluating her claim and (2) erred in discounting the opinion of Dr. Todd Grey, the autopsy prosector, that pneumoconiosis contributed to the decedent's death.

We review the Board's order to determine whether the Board correctly concluded that the ALJ's decision was supported by substantial evidence and not contrary to the law. Hansen v. Director, OWCP, 984 F.2d 364, 368 (10th Cir. 1993). "In determining whether substantial evidence exists, the court cannot reweigh the evidence, but may only inquire into the existence of evidence to

support the trier of fact." Id. (quotation omitted).

We turn first to the legal standard at issue. For claims filed on or after January 1, 1982, "death will be considered due to pneumoconiosis . . . [w]here pneumoconiosis was a substantially contributing cause or factor leading to a miner's death or where the death was caused by complications of pneumoconiosis." 20 C.F.R. § 718.205(c)(2). When "the principal cause of death was a medical condition not related to pneumoconiosis," a survivor will not be entitled to benefits, "unless the evidence establishes that pneumoconiosis was a substantially contributing cause of death." Id. § 718.205(c)(4). In an opinion issued after the decisions of the ALJ and the Board here, we joined several other circuits in interpreting the regulatory language, "a substantially contributing cause or factor leading to the miner's death," to mean "hastening death to any degree." Northern Coal Co. v. Director, OWCP, 100 F.3d 871, 874 (10th Cir. 1996).

The Director concedes that neither the ALJ nor the Board applied the "hastening death" standard in evaluating petitioner's claim. Petitioner contends that this change in the articulation of the legal standard requires us to remand the case for reevaluation by the ALJ. The Director, however, argues that the change in the legal standard does not affect the denial of benefits here, because the denial was based on the ALJ's determination that the only evidence supporting petitioner's claim--Dr. Grey's opinion--was conclusory. We agree with the Director

that adoption of the "hastening death to any degree" standard does not require a remand.

In denying benefits, the ALJ found that Dr. Grey's autopsy report was insufficient to meet petitioner's burden of establishing death due to pneumoconiosis. The ALJ discounted Dr. Grey's opinion that the decedent's pneumoconiosis contributed to his death because Dr. Grey "failed to note . . . any rationale for this finding. Such a conclusion, without any supporting documentation or explanation, is insufficient to satisfy the requirements of the regulations." Admin. R. at 61-2. The ALJ also noted that the record contained no corroborating evidence that pneumoconiosis contributed to the decedent's death. The Board affirmed the denial of benefits, concluding that, because an ALJ may "accord little weight to an opinion he finds to be conclusory or unexplained, or unsupported by any documentation," the ALJ did not err in finding that Dr. Grey's autopsy report was insufficient to establish that decedent's death was due to pneumoconiosis. Id. at 17.

The autopsy report contains the following description of the decedent's lungs on gross examination:

> The pleural surfaces are slightly wrinkled and remarkable for moderate to severe anthracosis. The pleural surfaces are also remarkable for scattered small tan-white nodules measuring to 0.2 cm. Examination of the hilar lymph nodes reveals moderate anthracosis without calcification. Sectioning of the lungs reveals congestion and embalming artefacts with slightly increased uniform firmness through-

out all lobes.

Id., Director's Ex. No. 10, Report of Autopsy, at 3. The autopsy report does not include a description of any microscopic examination of the decedent's lungs, although the record suggests that Dr. Grey performed a microscopic inspection.[1]

Two pathologic diagnoses are listed in the autopsy report, the second of which reads as follows: "II. Mild-to-moderate Miner's Pneumoconiosis. A. Moderate-to-severe pulmonary anthracosis. B. Pleural nodules consistent with mild silicosis." Id. at 4. The report then concludes with the following opinion from Dr. Grey:

> This 65-year-old White male, Herman Maynard, died as a result of coronary artery disease secondary to generalized atherosclerosis (hardening of the arteries). Contributory to death was mild-to-moderate Miner's Pneumoconiosis. Investigation indicates the decedent collapsed after complaining of chest pain. The decedent had a long occupational history of mine work.

Id. As the ALJ correctly noted, the autopsy report does not contain any explanation for Dr. Grey's conclusion that the decedent's pneumoconiosis contributed to his death.

Nor does Dr. Grey's subsequent correspondence cast any light on his reasoning. In a letter to the Department of Labor, dated August 29, 1991, Dr.

---

[1]     In August 1991, Dr. Grey sent a letter to the Department of Labor stating that he was unable to provide the agency with either slides or tissue samples from the decedent's lungs, because he lost them when he moved his office several months earlier.

Grey stated: "I conducted an autopsy and found that Mr. Maynard died of coronary artery disease. However, I found mild to moderate lung disease consistent with silicosis. I certified that the lung condition was a contributory factor in Mr. Maynard's death." Id., Letter of Aug. 29, 1991, at 1. Two months later, in a letter to petitioner's attorney, Dr. Grey stated:

> I found that Mr. Maynard had severe coronary artery disease and certified that this was the underlying cause of death. However, I also found evidence of mild to moderate pneumoconiosis. I certified that this was a significant contributory factor in Mr. Maynard's death. . . . While I can not say the cause of his death was solely the result of damage to his lungs from his many years of working in the mines, I do believe that it played a role in his demise. If I did not believe this to be the case, I would not have listed his lung disease as a significant contributory factor on the death certificate.

Id., Director's Ex. No. 20 at 2.

In determining whether substantial evidence supports the ALJ's determination that petitioner did not meet her burden of establishing that the decedent's death was due to pneumoconiosis, we must keep in mind that "[t]he ALJ is not bound to accept the opinion or theory of any given physician, but may weigh the medical evidence and draw his own inferences. We may not set aside an inference because we find the opposite one more reasonable or because we question its factual basis." American Coal Co. v. Benefits Review Bd., 738 F.2d 387, 391 (10th Cir. 1984). Further, "[a]n ALJ may disregard a medical opinion that does not adequately explain the basis for its conclusion." Risher v. OWCP, 940 F.2d

-6-

327, 331 (8th Cir. 1991). Based upon our review of the record, we conclude that the ALJ acted within his discretion in disregarding Dr. Grey's opinion about the role pneumoconiosis played in the decedent's death. Dr. Grey's own findings reflect only mild to moderate lung disease, the other record evidence does not suggest that the decedent had a significant lung impairment, and Dr. Grey provided no explanation for his conclusion that pneumoconiosis contributed to the decedent's death.

As the Director points out in his brief, if petitioner can obtain another opinion from Dr. Grey adequately explaining and documenting his conclusion that pneumoconiosis contributed to the decedent's death, petitioner can submit the new opinion to the Department of Labor in support of a request for modification. See 33 U.S.C. § 922, as incorporated by 30 U.S.C. § 932(a); 20 C.F.R. § 725.310; Lango v. Director, OWCP, 104 F.3d 573, 578 (3d Cir. 1997). On the present record, however, we cannot say that the ALJ erred in denying petitioner survivor benefits.

AFFIRMED.

Entered for the Court

James K. Logan
Circuit Judge